1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AN DUY NGUYEN,

           Petitioner,

  v.

MIKE EVANS, Warden,

           Respondent.

_____/

No. C 07-3979 SI (pr)

**ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS**

**INTRODUCTION**

      This matter is now before the court for consideration of the merits of An Duy Nguyen's
pro se petition for writ of habeas corpus concerning his conviction in the Santa Clara County
Superior Court. For the reasons discussed below, the petition will be denied.

**BACKGROUND**

      Defendant and fellow members of the Vietnamese Gangsters street gang, Bao
Tran, Cuong Tran, and Trung Nguyen, . . . went to the Tinh Café. Cuong and Trung
entered and saw that members of a rival street gang, the Asian Warriors, were already
seated in the café. They walked past the Asian Warriors, sat down at a table, and
exchanged stares with some of the Asian Warriors. Defendant and Bao then entered and
proceeded past the Asian Warriors toward the table occupied by Cuong and Trung.
Cuong and Trung left the table, encountered defendant and Bao, and warned them that
Asian Warriors were present. Defendant sat at the table, while Bao followed Cuong and
Trung back past the Asian Warriors. Cuong, however, confronted Asian Warrior Duy
Phan. They exchanged stares and words. Defendant left the table and walked toward
Cuong. Asian Warrior Vu Pham watched defendant rather than Cuong and Duy. Duy
got up from his table, and a melee began. Defendant pulled out a knife and stabbed Vu.
Vu retreated to the exit, and defendant threw a glass at him. Vu collapsed outside and
died the next day from the wound.[2]

[footnote 2:] The café had a videotape system that recorded most of what occurred inside
the café. The stabbing, however, happened off camera.

Cal. Ct. App. Opinion, p. 2 (first footnote omitted).  (For the sake of clarity, the state court opinion used several participants' first names instead of surnames, and this court will do the same.)  At trial, evidence was presented about Vietnamese gangs and gang violence in the San Jose area.  There was evidence that, in an earlier incident, Vu (the victim in this case) had been on the perpetrating end of some violence against someone in Nguyen's gang.  RT 729. Nguyen's defense was that of self-defense.

Following a jury trial in Santa Clara County Superior Court, Nguyen was convicted of second degree murder.  See Cal. Penal Code § 187.  The jury found true the allegations that he committed the crime for the benefit of a criminal street gang and personally used a knife in committing the murder.  See Cal. Penal Code §§ 186.22(b),  12022(b)(1).  On February 25, 2005, Nguyen was sentenced to 15 years to life plus one year in prison.

He appealed.  The California Court of Appeal affirmed the conviction in a reasoned opinion on May 18, 2006.  The California Supreme Court denied his petition for review and petition for writ of habeas corpus on September 13, 2006.

Nguyen then filed this action.  The court found cognizable six claims in the petition and ordered respondent to show cause why the petition should not be granted.  Respondent filed an answer and Nguyen filed a traverse.  The matter is now ready for review on the merits.

**JURISDICTION AND VENUE**

This court has subject matter jurisdiction over the petition for writ of habeas corpus under 28 U.S.C. § 2254.  28 U.S.C. § 1331.  This action is in the proper venue because the challenged conviction occurred in Santa Clara County, within this judicial district.  28 U.S.C. §§ 84, 2241(d).

**EXHAUSTION**

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state

1    judicial remedies, either on direct appeal or through collateral proceedings, by presenting the

2    highest state court available with a fair opportunity to rule on the merits of each and every claim

3    they seek to raise in federal court.  28 U.S.C. § 2254(b), (c).  State judicial remedies have been

4    exhausted for the claims presented in the petition.

5

6                                      **STANDARD OF REVIEW**

7         This court may entertain a petition for writ of habeas corpus "in behalf of a person in

8    custody pursuant to the judgment of a State court only on the ground that he is in custody in

9    violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The

10   petition may not be granted with respect to any claim that was adjudicated on the merits in state

11   court unless the state court's adjudication of the claim: "(1) resulted in a decision that was

12   contrary to, or involved an unreasonable application of, clearly established Federal law, as

13   determined by the Supreme Court of the United States; or (2) resulted in a decision that was

14   based on an unreasonable determination of the facts in light of the evidence presented in the

15   State court proceeding."  28 U.S.C. § 2254(d).

16        "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court

17   arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or

18   if the state court decides a case differently than [the] Court has on a set of materially

19   indistinguishable facts."  Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).

20        "Under the 'unreasonable application' clause, a federal habeas court may grant the writ

21   if the state court identifies the correct governing legal principle from [the] Court's decision but

22   unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  "[A] federal

23   habeas court may not issue the writ simply because that court concludes in its independent

24   judgment that the relevant state-court decision applied clearly established federal law

25   erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.  A

26   federal habeas court making the "unreasonable application" inquiry should ask whether the state

27   court's application of clearly established federal law was "objectively unreasonable."  Id. at 409.

28

                                                 3

**United States District Court**
For the Northern District of California

**DISCUSSION**

A.    <u>Vouching Claim</u>

Nguyen argues that both the prosecutor and judge improperly vouched for witness Bao Tran in their statements and questions about his obligations under a plea agreement. He contends that "while on their face both the plea agreement and the court's exhortations to the witness merely required Bao Tran 'to tell the truth,' the fact is that the prosecution, and later the court, were the ones who would decide what 'the truth' was." Petition For Review, p. 4. He urges that, "despite its facial neutrality, the plea agreement undoubtedly had a powerful coercive effect on the witness to give the version of 'the truth' that had been approved in advance by the prosecution." <u>Id.</u> at 5. "By representing to the jury that the prosecutor had only asked Bao Tran to tell the 'truth' the prosecution – and, indeed, the court – improperly suggested to the jury that the prosecution and the court had some unexplained method or insight which allowed them to determine whether the witness' testimony was truthful." <u>Id.</u>

1.    <u>Background</u>

At the outset of his testimony for the prosecution, Bao Tran was questioned about his plea agreement and guilty plea. He testified that when he entered his plea, he was told he would have to testify against the co-defendants and would have to testify fully and truthfully. He also testified that he signed a four-page plea agreement, that all the conditions of his plea agreement were in that document, and that he did not recall any promises other than those contained in the plea agreement. The written plea agreement was admitted as evidence. RT 1285. Bao Tran acknowledged that the plea agreement stated that if the court found that he had not testified truthfully, he could have his plea revoked and again face murder charges.

After Bao Tran gave many "I don't recall" type answers, the court interrupted the examination and cautioned him. Immediately after Bao Tran testified he did not recall whether he saw Nguyen with a weapon in his hand, and did not recall whether he heard Nguyen say or

4

do anything threatening, the court gave the caution at issue.[1]

> THE COURT:  Mr. Tran, your answers since you've been on the witness stand here is I don't recall, I don't remember.  I want to remind you of the agreement you made with the Court to tell the truth, the whole truth, and nothing but the truth. [¶] Mr. Interpreter, please say that.

> THE WITNESS: Yes, I do.

> THE COURT: All right.  When someone sees someone with a weapon inside of a small restaurant and is asked if they saw that person in the future with a weapon, the answer normally wouldn't be I don't recall.  Either you did or you didn't.  And several times you've been asked questions of a situation which would be considered a serious magnitude in anyone's life, and every time you answer you don't remember. [¶] I do want to remind you that I am the one that will be deciding what your sentence is to be based on the good faith of your keeping the bargain that we have.  Now, so far you saying you don't recall to very serious items or conversations under extreme circumstances is not in your favor.  Do you understand that?

> THE WITNESS:  Yes, I understand.

* * *

> THE COURT:  All right.  Now I'm not trying to intimidate you into saying something that's not true.  What I am trying to do is bring to your attention the importance that you must tell the truth.

> THE WITNESS:  I would like to apologize to the Judge because I had – I was locked in for two years and then my mind was not very clear when I were released.  I am very forgetful and sometimes I remember thing here and there, sometimes I don't.  Therefore, if I say I don't recall, you know, I apologize for that because I do not recall.

> THE COURT:  I understand.  But both attorneys are asking you very serious questions.  It's important that we know as close as possible the truth.  So when the attorneys ask you questions do your best to tell the truth.

RT 1339-1340.

In his closing argument, the prosecutor argued that Nguyen and the other Vietnamese Gangsters understood that they were going to attack the Asian Warriors.  He continued: "Bao told you, didn't want to tell you, but because he's here on a plea agreement that he's got to tell

---

[1]In addition to those matters mentioned in the text, Bao Tran testified he did not recall who was throwing glasses in the café, whether a glass came from the direction of Cuong, whether he saw Nguyen with a knife, whether Trung was with Bao Tran when Bao Tran left the café, whether in the kitchen Cuong yelled "who's A-Dub, fuck A-Dub, I'm going to kill them," RT 1322, whether Bao Tran conversed with the café owner after walking back into the café from the kitchen, whether a person with a gun was wearing a white beany or a red baseball cap, whether in the car afterward Nguyen said anything about having acted in self-defense, whether Nguyen and the others were talking in the car, whether anyone in the car threw anything, or where Nguyen went after Bao Tran drove him away.  RT 1312-1328.

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

the truth or he could be facing murder charges again, said, yeah, I knew when Cuong walked back that we weren't leaving, that he was going to challenge the Asian Warriors."  RT 1709. The prosecutor also argued that, although Bao Tran initially said Cuong urged his fellow Vietnamese Gangsters to leave, "[w]hen he was challenged and questioned and pointed out that he had a plea agreement to testify truthfully he said, no, I know (sic) Cuong was going over to challenge the Asian Warriors." RT 1776. This last comment was in rebuttal to defense counsel's argument that Cuong wanted to leave when he saw members of the other gang were at the café.

The California Court of Appeal rejected the vouching claim on the merits and for failure to object.  The court explained that a prosecutor's assurance based on the record regarding the apparent honesty or reliability of prosecution witnesses is not improper vouching.  Cal. Ct. App. Opinion, p. 4.  Here, because the "prosecutor's remarks about Bao's honesty were based on the plea bargain agreement that was in the record," they did not constitute vouching.  Id. at 5.

> Neither the phrasing nor the content of Bao's plea bargain agreement suggested a pretrial determination by the prosecutor that Bao would be telling the truth, or otherwise portrayed the prosecutor's office as privy to information bearing on Bao's veracity that was not admitted at trial.  [Citation.]
>
> Defendant's underlying point seems to be that the prosecution "manufactured" Bao's evidence by virtue of the plea bargain because "the final arbiter of whether [Bao] had testified 'truthfully' was the prosecution, and ultimately, the court."  But this point illustrates an interpretation of the evidence rather than vouching.  A plea bargain agreement not only supports a witness' credibility by showing an interest to testify truthfully, but also impeaches a witness' credibility by showing an interest in testifying favorably for the government, regardless of the truth.  (United States v. Drews (8th Cir. 1989) 877 F.2d 10, 12.)  Defendant was free to argue that the prosecution manufactured Bao's testimony.

Cal. Ct. App. Opinion, p. 5.

2.    Analysis

Vouching alone will not require a new trial; rather, like other forms of prosecutorial misconduct, the vouching must make the trial fundamentally unfair for habeas relief to be granted.  The appropriate standard of review for a prosecutorial misconduct claim in a federal habeas corpus action is the narrow one of due process and not the broad exercise of supervisory power.  Darden v. Wainwright, 477 U.S. 168, 181 (1986).  A defendant's due process rights are

United States District Court
For the Northern District of California

1   violated when a prosecutor's acts render a trial fundamentally unfair. Id.; Smith v. Phillips, 455

2   U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial

3   misconduct is the fairness of the trial, not the culpability of the prosecutor").

4          "'Vouching consists of placing the prestige of the government behind a witness through

5   personal assurances of the witness's veracity, or suggesting that information not presented to the

6   jury supports the witness's testimony.'" United States v. Necoechea, 986 F.2d 1273, 1276 (9th

7   Cir. 1993). Vouching poses "two dangers: such comments can convey the impression that

8   evidence not presented to the jury, but known to the prosecutor, supports the charges against the

9   defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the

10  evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the

11  Government and may induce the jury to trust the Government's judgment rather than its own

12  view of the evidence." United States v. Young, 470 U.S. 1, 18-19 (1985). In Young, the

13  prosecutor improperly expressed his personal belief about the defendant's guilt, but reversal was

14  not required because his comments did not suggest that he was relying on information outside

15  the evidence presented at trial and instead tied his belief to the evidence in the record, and the

16  evidence of guilt was overwhelming. Id. at 19. Young provides the clearly established federal

17  law for purposes of a habeas action in which 28 U.S.C. § 2254(d) applies, according to King v.

18  Schriro, 537 F.3d 1062, 1069 (9th Cir. 2008), cert. denied, 2009 WL 578747 (2009), although

19  Young does not appear to decide a constitutional question. In this case, the question therefore

20  is whether the state court "unreasonably concluded that, taken in context, the prosecutor's

21  comments neither placed the government's imprimatur on [the witness'] testimony nor implied

22  that information not in evidence showed what the truth really was, such that the 'fairness,

23  integrity or public reputation of the judicial proceedings' were seriously affected." Id. at 1069.

24         Nguyen lumps the judge's comments together with the prosecutor's comments to make

25  his vouching claim, but identifies no Supreme Court case where the trial judge's comments have

26

27

28

7

been considered vouching or prosecutorial misconduct.[2]  When looking at the trial judge's behavior, the court does, however, ask a question quite like that for prosecutorial misconduct, i.e.,  "whether the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution."  Duckett v. Godinez, 67 F.3d 734, 740 (9th Cir. 1995), cert. denied, 517 U.S. 1158 (1996).  The mere fact that the judge's questions may have elicited answers detrimental to the defense or helpful to the prosecution is not enough.  Id.  Even in the context of a direct appeal where the standards are higher, see id., the record must disclose actual bias or leave the "reviewing court with an abiding impression that the judge's remarks and questioning of witnesses projected to the jury an appearance of advocacy or partiality."  United States v. Parker, 241 F.3d 1114, 1119 (9th Cir. 2001).  The judge is "more than a moderator or umpire," however.  Id. (citation and quotation marks omitted).

The state court's rejection of Nguyen's vouching claim was not contrary to or an unreasonable application of Young or Darden.  Like the state court, this court does not see the prosecutor's questions and comments as rising to the level of a due process violation.  He did not state or even suggest that he or the court had some special knowledge outside the record that would enable him to determine whether Bao Tran's testimony was truthful.  Whether vouching occurs with reference to questions and comments about a plea agreement that calls for a witness to testify truthfully is a very fact-specific inquiry.  See, e.g., King, 537 F.3d at 1068-69 (state court reasonably found no vouching where prosecutor in opening argument said witness would implicate defendant if witness "testifies truthfully"); United States v. Ortiz, 362 F.3d 1274, 1279 (9th Cir. 2004) (improper vouching when prosecutor implies that the court, as well as law enforcement, can, has, and will monitor the witnesses' truthfulness in order to enforce terms of plea agreement, but no plain error where prosecutor did not refer to anything outside the record or directly express a personal opinion); United States v. Rudberg, 122 F.3d 1199, 1204 (9th Cir.

---

[2]Nguyen does not claim that he was deprived of a defense witness.  The court thus does not look to those case where the court warns a defense witness in such coercive or threatening manner that the defendant is deprived of a key witness on his behalf.  See Webb v. Texas, 409 U.S. 95, 98 (1972) (in lengthy warning, trial judge accused potential witness of planning to commit perjury and threatened to put him in jail for a long time if he committed perjury).

1997) (prosecutor engaged in impermissible vouching by repeated references to the obligation of critical witnesses who are cooperating with the government under plea agreements to testify truthfully, in exchange for government motions for reduced sentences and court granting such motions). Having compared the cases with the record in this trial, it cannot be said that the state court of appeal unreasonably applied <u>Young</u> or <u>Darden</u> in concluding that there was no vouching. The prosecutor's questions about the requirement in the plea agreement that Bao Tran testify truthfully simply reflected the terms of the plea agreement, and not some truth-detecting mechanism outside the record. The plea agreement was part of the evidence for the jury to consider. And the defense remained free to argue bias based on the existence of the agreement.

The prosecutor's closing argument also did not express his personal opinion that Bao Tran was truthful. Any suggestion in the closing argument that Bao Tran's testimony was truthful was not improper because it was not a personal opinion of his veracity but instead an argument that the record supports the witness' credibility. <u>See</u> <u>Necoechea</u>, 986 F.2d at 1279.

The judge's comments did not rise to the level of making the trial fundamentally unfair. He only gave the caution after Bao Tran gave evasive answers. The judge explained that the reason he was reminding Bao Tran to tell the truth was because people normally don't forget what they saw and heard when they were just feet away from a murder. This explanation put his other comments in context for the jury, and reasonably would have dispelled any notion that there was some touchstone for measuring the truth that was unknown to the jury. This was not a situation where the witness flipped his testimony – first saying "no" and then saying "yes" after the judge's comments. The judge was neutral as to what the answer should be, other than to suggest that the truth most likely wasn't "I don't know." Bao Tran remained free to say "yes" or "no" and the judge's comments did not suggest which of those choices the witness should pick. In fact, the judge specifically stated that he was "not trying to intimidate you into saying something that's not true. What I am trying to do is bring to your attention the importance that you must tell the truth." RT 1340. The judge did not indicate to the jury that he knew what the truth was and did not align himself with the prosecution. His cautionary comments to the

1   witness promoted a fair trial, and did not project to the jury an appearance of advocacy or

2   partiality.  See Parker, 241 F.3d at 1119.

3        Nguyen argues that the plea agreement requiring that the truth be told had a powerful

4   influence on Bao Tran that he had to tell a truth that would line up with the prosecutor's idea of

5   what the truth was.  But that is not relevant to the vouching issue, as the vice of vouching is the

6   potential impact on the jury's analysis of the evidence.   Nguyen emphasizes that the prosecutor

7   and court would be deciding whether Bao Tran was telling the truth, but that is not an unusual

8   feature of a plea agreement for an accomplice.  What is important for the vouching analysis is

9   that the prosecutor and judge neither stated nor implied that the jury should believe Bao Tran

10  because they knew what the truth was and wouldn't let him tell anything but the truth.  Further,

11  despite Nguyen's suggestion to the contrary, a plea agreement that calls for a witness to testify

12  truthfully is not inherently improper.  See Allen v. Woodford, 395 F.3d 979, 995 (9th Cir.), cert.

13  denied, 546 U.S. 858 (2005) ("An agreement that requires a witness to testify truthfully in

14  exchange for a plea is proper so long as 'the jury is informed of the exact nature of the

15  agreement, defense counsel is permitted to cross-examine the accomplice about the agreement,

16  and the jury is instructed to weigh the accomplice's testimony with care.'")  Defense counsel was

17  free to argue that the plea agreement caused Bao Tran to give distorted testimony, and the court

18  instructed the jury to weigh accomplice testimony with care.  RT 1672-73.

19       The place where Nguyen's claim really falters is on the prejudice issue.  To obtain habeas

20  relief, he must show that the error "'had a substantial and injurious effect or influence in

21  determining the jury's verdict.'"  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (citation

22  omitted).  Under this standard, habeas petitioners may obtain plenary review of their

23  constitutional claims, but they are not entitled to habeas relief based on trial error unless they can

24  establish that it resulted in "'actual'" prejudice.  See id.; Johnson v. Sublett, 63 F.3d 926, 930 (9th

25  Cir.), cert. denied, 516 U.S. 1017 (1995) (finding prosecutorial vouching "could not have had

26  substantial impact on the verdict necessary to establish reversible constitutional error" under

27  Brecht).  Even if the comments and questions amounted to improper vouching for Bao Tran, they

28

United States District Court
For the Northern District of California

did not have the necessary "substantial and injurious effect" on the verdict for habeas relief to be granted. Brecht, 507 U.S. at 623. Nguyen argues that the vouching interfered with other constitutional rights he had. See Resp. Exh. E, Appellant's Supplemental Opening Brief, pp. 15-17. But prejudice is not shown by simply referring to alleged interference with another constitutional right, which itself requires a showing of prejudice. His other arguments for prejudice in that brief also do not come close to showing any impact on the verdict and instead just emphasize his belief that there was vouching. Nguyen does not dispute respondent's characterization of Bao Tran as a rather unimportant witness for the prosecution. Bao Tran did not see the stabbing or what Nguyen did immediately before stabbing Vu, and that was a critical point in this case. Respondent argues without dispute that the videotape made most of what Bao Tran testified to be of lesser importance. The impact of the videotape also is suggested by the fact that, after 22 days of trial, the jury deliberated for less than three hours before reaching a verdict.[3] See CT 1272, 1280. The trial judge also remarked that "the strongest evidence against the defendant is not a witness, necessarily, but it is a video with a combination of numerous witnesses." RT 1637 (denying motion for judgment of acquittal). The jury instructions to view accomplice testimony with caution also tempered the impact of Bao Tran's testimony. See RT 1671-1673. The case against Nguyen was strong, see Young, 470 U.S. at 19, the comments did not misstate or manipulate the evidence, see Darden, 477 U.S. at 182, and the comments were not part of a pattern of misconduct, see Lincoln v. Sunn, 807 F.2d 805, 809 (9th Cir. 1987). Nguyen is not entitled to the writ on this claim.[4]

---

[3]This court's analysis relies on respondent's undisputed written description as to what is depicted on the videotape because the videotape is not in the record. For example, the court accepts that the videotape recorded much of the altercation though not the stabbing itself, in a chronological sequence of pictures from different angles and accepts that the stabbing took place off-camera in a 3-second window.

[4]As mentioned earlier, the California Court of Appeal rejected the vouching claim on the merits as well as for the procedural reason that the defense had not objected at trial. California's contemporaneous objection rule is one of the few procedural defaults that has been recognized and allowed in this circuit. See Vansickel v. White, 166 F.3d 953, 957-58 (9th Cir.), cert. denied, 528 U.S. 965 (1999). However, a procedural default may be excused where a petitioner shows cause for the default and resulting prejudice. Trial counsel's ineffectiveness may excuse a procedural default, see McCleskey v. Zant, 499 U.S. 467, 502 (1991), and Nguyen argues that

United States District Court
For the Northern District of California

B.    <u>Alleged Prosecutorial Misconduct In Closing Argument</u>

Nguyen argues that his right to due process was violated by five instances of prosecutorial misconduct during the closing argument.  According to Nguyen, (1) the prosecutor misstated the law when he said that, in evaluating the degree of a homicide, "[t]he defendant starts, he's guilty of murder, unless there's something to prove that something mitigates it down to a voluntary manslaughter," RT 1695-96, (2) the prosecutor misstated the law when he said that voluntary manslaughter "is basically the murder of a human being with the intent to kill, but under the law there's ways to mitigate the malice," RT 1700, (3) the prosecutor incorrectly stated that reasonable doubt must be "based upon the evidence" and "can't be based on a mere conflict in the testimony," RT 1733-34, (4) the prosecutor erred in arguing that actions taken by the victim that appeared to be aggressive were irrelevant to the claim of self-defense unless they were known to Nguyen, RT 1780-81, and (5) the prosecutor improperly appealed to the jury to convict as the "voice of the community" to speak out against gang violence, RT 1791.

As with the vouching claim above, the appropriate standard of review of these claims is the narrow one of due process – whether the comments rendered the trial fundamentally unfair. <u>Darden</u>, 477 U.S. at 181; <u>Smith</u>, 455 U.S. at 219 ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.")  The court considers whether the prosecutor's remarks were improper and, if so, whether the comments infected the trial with unfairness.  <u>Tan v. Runnels</u>, 413 F.3d 1101, 1112 (9th Cir. 2005), <u>cert. denied</u>, 546 U.S. 1110 (2006).  A prosecutor's misstatement of law is less likely to render a trial fundamentally unfair than if the trial court issues an erroneous instruction:

> [A]rguments of counsel generally carry less weight with a jury than do instructions from the court.  The former are usually billed in advance to the jury as matters of argument, not evidence . . and are likely viewed as the statements of advocates; the latter, we have often recognized, are viewed as definitive and binding statements of the law. . . . Arguments of counsel which misstate the law are subject to objection and to correction by the court. . . . This is not to say that prosecutorial misrepresentations may never have a decisive effect on the jury, but only that they are not to be judged as having the same force as an instruction from the court.  And the arguments of counsel, like the instructions

his trial attorney was ineffective for failing to make an objection.  Counsel's ineffectiveness might excuse the procedural default, so the court has discussed the merits of the claim.

1    of the court, must be judged in the context in which they are made.

2    Boyde v. California, 494 U.S. 370, 384-85 (1989) (citations omitted).

3         This court evaluates each challenged remark (and especially remarks 3 and 5) mindful

4    of an instructional anomaly not urged as error here or in state court: the trial judge neglected to

5    read most of the standard introductory instructions to the jury.  Before the presentation of

6    evidence began, the judge read to the jury some preliminary instructions, RT 703-705; before

7    the closing arguments were made, the judge read to the jury the instructions on the substantive

8    law, RT 1669-1692; and after the closing arguments, the judge gave concluding instructions as

9    to how to approach jury deliberations, RT 1792-1802.  The standard instruction that the court's

10   statement of the law prevailed over the attorneys' arguments was not read to the jury.[5]  The

11   written instructions, CT 1198-1270, included that instruction, CT 1199, and the written

12   instructions apparently were given to the jury for deliberations.  One indicator that the written

13   instructions were given to the jury was that appellate counsel did not disagree after respondent

14   conceded in his state appellate brief that he could find no record of the instruction being read in

15   the reporter's transcript, but urged it was in the instruction packet given to the jury.  See Resp.

16   Exh. F, p. 27.  Another indicator is that the judge told the jury that the instructions he was

17   reading "will be made available to you in written form or (sic) for your deliberations." RT 1691.

18   But see Cal. Penal Code § 1093(f) (distinguishing between advising that a written copy of the

19   instructions will be made available and physically handing them over to the jury).  The

20   instructional anomaly matters for the prosecutorial misconduct claim because the California

21   Court of Appeal relied on the instruction that the judge's statements of law control over counsel's

22   argument to cure the taint of several alleged mistakes.  See Cal. Ct. App. Opinion, p. 6

23   (describing the principles that the jury is presumed to have treated the court's instructions as

24

25   _____

26   [5]CALJIC 1.00 describes the respective duties of judge and jury, and states, in part: "You
     must accept and follow the law as I state it to you, regardless of whether you agree with it.  If
27   anything concerning the law said by the attorneys in their arguments or at any other time during
     the trial conflicts with my instructions on the law, you must follow my instructions."  The
     sentiment of the first quoted sentence was included in the instructions read to the jury, RT 703,
28   but the judge did not read or verbally convey the idea of the second sentence to the jury.

United States District Court
For the Northern District of California

statements of the law and the prosecutor's comments as words spoken by an advocate and that "'juries are warned in advance that counsel's remarks are mere argument"), p. 9 (Nguyen "overlooks the instructions given in the case, including those on reasonable doubt and the distinction between argument and instructions").  Reliance on the curative power of that instruction must be at least reduced because that instruction was not read to the jury, although it apparently was included in the written packet made available to the jury.

### 1.   Remark # 1

After discussing the malice element of murder and arguing how the evidence showed malice, the prosecutor argued:

> And I will get to the issues of self-defense and heat of passion and sudden quarrel, but the law is clear. *The defendant starts, he's guilty of murder, unless there's evidence to prove that something mitigates it down to a voluntary manslaughter.*  However, to get to a first degree murder, you have to find that the defendant deliberately, willfully, and premeditated the murder.

RT 1695-1696.

The California Court of Appeal rejected the argument that the prosecutor shifted the burden of proof by suggesting the defendant had to prove the offense was less than murder. Nguyen "focuses on isolated remarks taken out of context and overlooks the trial court's instructions" that properly defined the elements of the offenses and burden of proof.  Cal. Ct. App. Opinion, p. 7.

As the state appellate court reasonably concluded, when the context is considered, the comment was not improper.  The italicized statement, viewed in isolation does erroneously suggest that the presumptive verdict would be the most serious (i.e., first degree murder), and the defendant bears the burden to convince the jury otherwise.  But the instruction must be viewed in context.  See Boyde, 494 U.S. at 385.  The context is that the prosecutor had prefaced his comments with his statement that he wanted to take the jury through the various kinds homicides at issue (i.e., first degree murder, second degree murder, voluntary manslaughter, and the law of self-defense), then argued about malice aforethought, then made the italicized

United States District Court
For the Northern District of California

14

United States District Court
For the Northern District of California

statements, and then talked about premeditation and deliberation.  RT 1694-1696.  The prosecutor was working with a flow chart as a visual aid, see RT 1774, and his statement indicates that he was referring to that chart.  The italicized statement was in the context of taking the jury through the various kinds of homicides the jury would consider in the deliberations and cannot reasonably be viewed as having led jurors to think they should assume defendant guilty of murder unless there was evidence to show a lesser crime.  "Because 'improvisation frequently results in syntax left imperfect and meaning less than crystal clear,' 'a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through a lengthy exhortation will draw that meaning from the plethora of less damaging interpretations.'"  Williams v. Borg, 139 F.3d 737, 744 (9th Cir.), cert. denied, 525 U.S. 937 (1998) (citation omitted).  Defense counsel argued the burden of proof in his closing argument, RT 1738-1740, and the court's instructions read to the jury defined the elements of the various levels of homicide and correctly stated the burden of proof.  This court will not infer that the jurors thought Nguyen had the burden to prove the offense was less than murder.

2.    Remark # 2.

The prosecutor stated during his closing argument: "Now, a voluntary manslaughter is basically the murder of a human being with the intent to kill, but under the law there's ways to mitigate the malice."  RT 1700.

The California Court of Appeal rejected Nguyen's argument that the prosecutor had wrongly equated voluntary manslaughter with murder.  The statement was part of the argument in which Remark # 1 was made that urged that the killing was murder and not a lesser crime.  There was "no reasonable likelihood that the jury took remark No. 2 out of context so as to ignore the trial court's instructions and convict defendant of murder while intending to convict him of manslaughter."  Cal. Ct. App. Opinion, p. 9.

As with remark # 1, the context in which it was made makes all the difference.  Standing alone, the sentence appears troubling, but in context makes sense and did not convey an

15

erroneous statement of the law.  The transcript, RT 1696-1702, shows the prosecutor leading the jury through the various kinds of homicides and explaining why the stabbing Nguyen did was not an act that fit the legal description of voluntary manslaughter.  Just before he made the challenged statement, the prosecutor argued that self-defense was not shown by the evidence, and then the prosecutor made the challenged statement as his segue into an explanation as to why heat of passion and provocation by the victim were not present in this case.  This court will not infer that the jurors thought they could convict Nguyen of murder when only voluntary manslaughter had been proven.

3.      Remark # 3:

The prosecutor quoted the reasonable doubt instruction and then said:

> What does that mean?  That means you have to have a doubt as to the defendant's guilt *that has to be based upon the evidence*.  You're not here to speculate or guess.  You've heard a lot of evidence in this case.  You've seen a lot of videos, you've heard from people, you've seen diagrams, you have the evidence.  This is what you're to derive your verdict from, not to guess.  And *your decision can't be just based on a mere conflict in the testimony.  It's got to be based on the evidence* in this case and it has to be reasonable.

RT 1733-34.

Nguyen argued that this was inconsistent with the federal constitution because reasonable doubt may grow out of the lack of evidence rather than the evidence that was presented.   The California Court of Appeal rejected this argument because it "overlooks the instructions given in the case, including those on reasonable doubt and the distinction between argument and instructions.  And he also again attributes a damaging meaning to a remark taken out of context." Cal. Ct. App. Opinion, p. 9.  The "prosecutor's remarks as a whole can be interpreted as urging the jury to consider the explanations of the evidence, which parallels the instruction on reasonable doubt. . . . There is no reasonable likelihood that the jury took the assailed remarks out of context so as to ignore the trial court's instructions and convict defendant on the evidence while harboring a doubt of his guilt because of some lack in the evidence." Id. at 10 (footnote omitted).

The state court's rejection of this prosecutorial misconduct claim was not unreasonable.

16

United States District Court
For the Northern District of California

Nguyen relies on a statement from <u>Victor v. Nebraska</u>, 511 U.S. 1, 18, (1994), that reasonable doubt may stem from the evidence "or from the lack of evidence on the part of the state," but neglects to note that the passage was not the Court's holding, but only a statement within a jury instruction under consideration by the Court.  In any event, this was not an absence of evidence case – the events leading up to the stabbing had been videotaped and the defendant had testified. The prosecutor directed the jury's attention to specific actions shown on the videotape and quoted the reasonable doubt instruction, and then made the challenged statements as part of his efforts to direct the jury's attention to the testimony, diagrams, and videotape. Another important contextual point is that the defense was that of self-defense and Nguyen had admitted stabbing the victim, so the prosecutor was trying to argue against self-defense.  Having considered the context in which the statements were made, the court will not infer that the jurors took the challenged statements to mean that they could reach a guilty verdict while doubting his guilt due to a lack of evidence.

4.      <u>Remark # 4</u>.

Nguyen contends that the prosecutor's argument rebutting a self-defense argument was improper.  The defense argued that the videotape showed movement by the victim, and argued that the victim was reaching toward his ankle and possibly grabbing something while he was seated just before the stabbing.  RT 1756-57.  After suggesting various possibilities as to what the victim was actually doing and thinking just before he was stabbed, defense counsel asked rhetorically, "did [the victim] have an agenda of his own, did he know because of my affiliation, because of who I was or who I want to be, I have to stay and fight?  Is it possible that he bought into that, is it possible?"  RT 1757.  The prosecutor responded that whether it was possible that the victim was just about to fight was not the standard, and also was not relevant.

> *The only way that that is relevant is if the defendant saw that, because remember, self-defense all deals with what's in the defendant's mind*.  It [is] not what's on the videotape. The only way that the defendant can use self-defense is *if at that time he saw that*.  Not whether or not the victim was shifting his hands together.  *It's whether or not the defendant saw that*. [¶] Did he testified to that?  No. . . . And in this case the defendant testified.  So whatever's on the videotape is irrelevant unless it corroborates what the

17

1   defendant said he saw.  In this case he never said he saw any of that when he testified.

2   RT 1780-81.

3       The California Court of Appeal rejected the argument that the italicized statements misled

4   the jury.  In context, the prosecutor was arguing that the "videotape did not support the self-

5   defense theory because the videotape did not show (1) a reasonable possibility that Vu [the

6   victim] reached for a weapon, or (2) anything seen by defendant that would cause him to fear

7   real or apparent imminent danger. [¶] There is no reasonable likelihood that the jury ignored the

8   trial court's instructions and interpreted the prosecutor's argument to mean that it was irrelevant

9   whether Vu possessed a weapon."  Cal. Ct. App. Opinion, p. 11.

10      The statement was not improper because the prosecutor was at that moment focusing on

11  Nguyen's state of mind at the time he stabbed the victim.  No knife was found that would allow

12  the victim to be considered an actual aggressor and the state court found that nothing on the

13  videotape showed the victim doing anything that indicated he was an actual aggressor, which

14  meant that Nguyen's self-defense rested largely on what appeared to him to be the situation.

15  Things not perceived by Nguyen were not relevant to whether he defended himself with the use

16  of force that "would have appeared to be necessary to a reasonable person in a similar situation

17  and with similar knowledge." CALJIC 5.50; see also CALJIC 5.51.  Elsewhere in the argument,

18  the prosecutor had acknowledged that what the victim did was relevant to self-defense, RT 1697-

19  98, but repeatedly argued that the victim in this case had not done anything that created an

20  imminent danger to Nguyen, RT 1727, 1730-33, 1738, 1786-87.  Defense counsel also argued

21  self-defense based on what appeared to Nguyen to be the situation, as he explained that actual

22  danger was not necessary.  RT 1769.  The state court was not unreasonable in concluding that

23  the comment was not improper.

24  /  /  /

25  /  /  /

26

27

28

**United States District Court**
For the Northern District of California

5.     Remark # 5.

Nguyen contends that the prosecutor improperly appealed to the jury's emotions to act "as the voice of this community" to convict Nguyen.

> The other issue that sometimes comes up and it got brought up, and a lot of times jurors who sit in a case like this, you know, you see societal issues, you say why do people become gang members, why do people join gangs, how do you get out of gangs, how do you get out of that life style?  You know what, why the defendant became a gang member, you know, what society should do about it is a topic you could have at any point in time.  But it has really no bearing on your verdict.  Your verdict here today is to decide what the defendant did and what is his motivation for what he did.  And I just need you to recognize it.

> *You are here as the voice of this community to deal with this issue.*  This gang violence has been going on for 10 years between these two gangs.  And gangsters have their own justice.  We saw, we heard about Viet Mai.  Seven months later he shot Truong Nguyen down the street.  We know what happened when Nick Dang was killed by some Asian Warriors.  You'll probably be reading a paper six, seven months from now and you're going to hear about some Asian Warrior that was killed in retaliation for Nick Dang.  *But in the criminal justice system as the voice of this community you have to stand up and say no more.  This community is not going to accept this.*  You need to bring justice to this situation.  You need to bring justice to Vu Pham's family for the violence and the tragedy that they've had to take because of the actions of that young man.  You need to hold him accountable.  Justice demands that you hold him accountable.  And the law and the evidence in this case does as well.

> When you look at the evidence, ladies and gentlemen, you're going to find that the only reasonable interpretation of the evidence you've heard in this case is that the defendant and his gang members coordinated and attacked these Asian Warriors who had the audacity to be in their coffee shop.

RT 1791-92.

The state appellate court determined that the italicized text was not an impermissible invitation for the jurors to step outside their role as objective fact finders, when the challenged remarks were viewed in context:

> The prosecutor reminded the jury that (1) societal issues had "no bearing" on the verdict, and (2) the verdict was "to decide what the defendant did."  The prosecutor did not urge the jury to convict defendant to preserve order or deter future crimes, he simply appealed to the jurors as members of the community to hold defendant "accountable" for his behavior.  Indeed, the same federal case that defendant cites to support his claim of error explains that prosecutors do not overstep constitutional bounds by exhorting jurors to "condemn" the accused for illegal behavior.  (United States v. Monaghan, [741 F.2d 1434, 1442 (D.C. Cir. 1984)].)  "Such appeals do not mislead the jury into considering social issues irrelevant to the defendant's own case.  Every criminal conviction is a 'public condemnation' of the person convicted; it informs society, in a highly visible and meaningful fashion, that the defendant has engaged in socially proscribed activity."  (Ibid.).

19

United States District Court
For the Northern District of California

Cal. Ct. App. Opinion, p. 13.  There was no reasonable likelihood that the jury construed or applied any of the challenged remarks in an objectionable fashion in light of the instruction that the jury was not to be influenced by "passion, prejudice, public opinion or public feeling," and the instruction "that the jury was to decide the case based on the court's instructions, disregarding anything contrary about the law stated by the attorneys.  Presuming, as we must, that the jury followed these instructions . . . we conclude it is not reasonably likely that the jury misunderstood its proper role as a result of remark No. 5."   Id.

Bearing in mind that the issue is whether the comments rendered the trial fundamentally unfair and not whether the remarks are "undesirable or even universally condemned," the court finds that they did not rise to the level of a due process violation.  Darden, 477 U.S. at 181. When read in context, and in conjunction with the instruction that the jurors were not to be influenced by passion and prejudice, RT 704, the challenged statements did not make the trial fundamentally unfair.  The gang component of this case was at the forefront throughout the trial, and its mention in the closing argument was not inflammatory.  There was evidence of the history of retaliatory activity, the confrontation between rival gangs was caught on videotape and the stabbing was alleged to be gang-motivated.  Nguyen's self-defense theory depended heavily on the gang backdrop to the encounter in the coffee shop to support inferences about the victim's acts and Nguyen's interpretations of them.  Further, part of defense counsel's closing argument tried to downplay some gang activity as youthful indiscretions.  See RT 1745-46, 1751, 1772. There also were criminal street gang sentence enhancement allegations for the jury to decide. Under all these circumstances, urging the jurors to act as the "voice of the community" did not result in a due process violation.

In sum, none of the five challenged remarks amounted to a due process violation for which Nguyen would be entitled to the writ.

/  /  /

/  /  /

**C.    Ineffective Assistance Of Trial Counsel**

Nguyen claims that trial counsel was ineffective in failing to object to the prosecutorial misconduct discussed above.

The California Court of Appeal rejected this claim. Since there was no prosecutorial misconduct found by that court, it followed that counsel could not be faulted for failing to object. Cal. Ct. App. Opinion, p. 14.

This court reaches the same conclusion. A habeas petitioner must establish two things to prevail on a claim that he was denied his Sixth Amendment right to effective assistance of counsel: (1) that counsel's performance fell below an "objective standard of reasonableness" under prevailing professional norms, Strickland v. Washington, 466 U.S. 668, 687-88 (1984); and (2) that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. Here, there was no prosecutorial misconduct, and therefore no constitutionally ineffective assistance in counsel's failure to object to the alleged vouching and each of the challenged remarks made in the closing argument. See Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996), cert. denied, 519 U.S. 1142 (1997) (no ineffectiveness in not taking futile action).

**D.    Instructional Error Claim**

Nguyen argues that three jury instructions regarding evidence of consciousness of guilt violated his right to due process because they highlighted particular pieces of evidence, rather than pinpointing legal theories, in violation of People v. Wright, 45 Cal.3d 1126 (Cal. 1988). The challenged instructions stated:

> In this case if you find that before this trial the defendant made a willfully false or deliberately misleading statement concerning the crime for which he is now being tried, you may consider that statement as a circumstance tending to prove the consciousness of guilt. However, that conduct is not sufficient by itself to prove guilt and its weight and significance, if any, are for you to decide.
>
> If you find that a defendant attempted to suppress evidence against himself in any manner, such as by concealing evidence by throwing a knife into bushes, this attempt

1    may be considered by you as a circumstance tending to show a consciousness of guilt.
2    However, this conduct is not sufficient by itself to prove guilt and its weight and significance, if any, are for you to decide. . . .

3        The flight of a person immediately after the commission of a crime, or after he is
4    accused of a crime, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding
5    whether a defendant is guilty or not guilty.  The weight to which this circumstances is entitled is a matter again for you to decide.

6    RT 1669-1671; see CALJIC 2.03, 2.06, and 2.52.

7        The California Court of Appeal gave short shrift to Nguyen's argument that these
8    instructions were improper pinpoint instructions that lessened the burden of proof.  The court
9    noted that Nguyen cited no authority in support of his argument and the appellate court was
10   bound to follow a recent case from the California Supreme Court that had concluded that the
11   instructions were proper and did not violate a defendant's constitutional rights.  Cal. Ct. App.
12   Opinion, p. 14.

13       The only way for Nguyen to obtain federal collateral relief here is by a showing that an
14   instructional error was committed and that such error, by itself, so infected the entire trial that
15   the resulting conviction violated due process.  See Estelle v. McGuire, 502 U.S. 62, 72 (1991).
16   Furthermore, even if the instruction was erroneous, relief would only be available if it had a
17   "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S.
18   at 637.  Nguyen comes nowhere near to making either showing.  Nguyen argues that the
19   instructions violated a supposed constitutional command of "absolute impartiality as between
20   the prosecution and the defendant in the matter of jury instructions," Petition, p. 13, but his
21   assertion is not supported by the authorities he cites.  Wardius v. Oregon, 412 U.S. 470 (1973),
22   requiring reciprocal discovery for information regarding an alibi, does not clearly establish (or
23   even naturally lead to) absolute impartiality in jury instructions as a constitutional right.  His
24   other case, Reagan v. United States, 157 U.S. 301, 310 (1895), at least states that jury
25   instructions should be impartial, but concerns whether a defendant's testimony may be singled
26   out as less believable because he is a defendant.  Neither Wardius nor Reagan addressed the
27   consciousness-of-guilt instructions.  Nguyen's suggestion that the instructions were biased in

28

favor of the prosecution also is factually incorrect.  The instructions did not posit the existence of misleading statements, concealment of evidence, or flight, but instead left both the existence and significance of those circumstances to the jury.  Further, the jury was instructed that it "may" but did not have to consider the event as tending to prove consciousness of guilt.  And most importantly, the jury was instructed as to each circumstance (i.e., misleading statements, concealment of evidence, and flight), that it was not alone enough to prove guilt.  The California Court of Appeal's rejection of the claim was not contrary to, or an unreasonable application of, clearly established federal law.

E.    Cumulative Error Claim

In some cases, although no single trial error is sufficiently prejudicial to warrant relief, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned.  See United States v. Frederick, 78 F.3d 1370, 1381 (9th Cir. 1996).  There were not multiple errors in Nguyen's trial, so there are no errors to accumulate and consider under the cumulative error doctrine.

F.    Ineffective Assistance of Appellate Counsel Claim

Nguyen alleges that his appellate counsel was ineffective in that he (a) failed to argue that trial counsel was ineffective when he failed to object to the improper vouching, (b) failed to argue that the prosecutor's many acts of misconduct denied Nguyen a fair trial, (c) failed to argue error in the admission of Bao Tran's plea agreement, and (d) failed to argue error in the trial court allowing the jury to consider a verdict of involuntary manslaughter.

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right.  See Evitts v. Lucey, 469 U.S. 387, 391-405 (1985).  Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in Strickland.  A defendant therefore must show that counsel's advice fell below an objective standard of reasonableness and that there is a reasonable

United States District Court
For the Northern District of California

probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. Miller v. Keeney, 882 F.2d 1428, 1434 & n.9 (9th Cir. 1989) (citations omitted).  Appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant.  See Jones v. Barnes, 463 U.S. 745, 751-54 (1983).  The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy.  See Miller, 882 F.2d at 1434.  Appellate counsel therefore will frequently remain above an objective standard of competence and have caused his client no prejudice for the same reason–because he declined to raise a weak issue.  Id.

The first two claimed errors are easily dispatched: since there was no error for the reasons discussed earlier in this order, appellate counsel was not ineffective for failing to argue prosecutorial misconduct or trial counsel's failure to object to that alleged misconduct.  The third claimed error also has not been shown to have merit, as the plea agreement was admissible in evidence and this court has rejected the argument that there was vouching with regard to Bao Tran's duties under the plea agreement to testify truthfully.

Finally, Nguyen contends that appellate counsel failed to assert a claim that the trial court erred in refusing to allow the jury to consider a verdict of involuntary manslaughter.  The trial court gave an instruction on voluntary manslaughter but refused to give one on involuntary manslaughter because the record did not support it.  "[A]s to involuntary manslaughter, the court feels that within the evidence there is no facts, evidence or justification that any misdemeanor criminal activity occurred to justify the involuntary manslaughter instruction." RT 1641.  Any error was harmless.  Under the instructions given, the jurors could consider the crimes in whatever order they chose but could not reach a lesser verdict until they unanimously agreed that the defendant was not guilty of a greater crime.  See RT 1680.  Thus, the jury could not vote for second degree murder until there was unanimous agreement that he was not guilty of first degree murder, and it could not vote for voluntary manslaughter until there was unanimous agreement that he was not guilty of second degree murder.  Had involuntary manslaughter been added, it would have been added to the end of this list after voluntary manslaughter, but the jury never

would have reached it.  The jury did not even get as far as voluntary manslaughter because it found Nguyen guilt of second degree murder.  Once the jury found him guilty of second degree murder, it could not consider voluntary or involuntary manslaughter at that point.  The failure to offer involuntary manslaughter as an option caused him no harm.  Appellate counsel reasonably chose not to argue the failure-to-instruct claim where he would be unable to show it was not harmless error.  Nguyen is not entitled to the writ on the ineffective assistance of appellate counsel claims.

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is DENIED.  The clerk shall close the file.

IT IS SO ORDERED.

DATED: March 24, 2009

_____
SUSAN ILLSTON
United States District Judge

United States District Court
For the Northern District of California

25